# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00157-CV

**Laredo Coca-Cola Bottling Co. and Coca-Cola Enterprises, Inc., Appellants**

**v.**

**Susan Combs, Comptroller of Public Accounts of the State of Texas; and Greg Abbott, Attorney General of the State of Texas, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. D-1-GN-03-000575, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

## O P I N I O N

This is a suit for a tax refund. Appellants Laredo Coca-Cola Bottling Company and Coca-Cola Enterprises, Inc. purchased soda fountain equipment and then provided the equipment to businesses that used it to sell Coca-Cola drinks to customers. Appellants sued appellees Susan Combs, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas (collectively, the "Comptroller") to recover sales tax paid on appellants' purchases of the equipment. The district court granted the Comptroller's motion for summary judgment and entered a take nothing judgment in favor of the Comptroller on all of appellants' claims. We hold that appellants' purchases are not exempt from sales tax under former tax code section 151.318(g) (the manufacturing exemption), because appellants do not use the equipment for manufacturing, or under tax code section 151.302 (the sale-for-resale exemption),

because appellants' provision of the equipment to businesses was not done or performed for consideration as required by the tax code. We affirm the judgment of the district court.

*Factual and Procedural Background*

Appellants are distributors of Coca-Cola branded soft drinks. Appellants purchase concentrate from which they manufacture the finished drink to be placed in bottles or cans and then sold. Appellants also sell to retailers (such as bars and restaurants) the necessary elements for the soft drink to be sold as a fountain product—both the canisters of syrup and carbon dioxide that the fountain equipment mixes with water to produce the soft drink, and the cups, lids, and straws with which an individual drink may be sold. Some of these customers already possess the necessary fountain equipment. For those customers that do not, appellants provide the fountain equipment under one of two types of agreements: (1) a "lease" or "rental" agreement under which the customer makes monthly payments for the use of the equipment; or (2) a "commitment agreement" under which no payments are required, but the customer makes certain commitments.

The latter type of agreement—under which appellants provide fountain equipment free of charge—is at issue in this case. Appellants use various form agreements to document this type of agreement with their customers. Generally, the agreements require the customer to purchase a minimum amount of syrup, carbon dioxide, and cups from appellants, and to stock the equipment only with appellants' products, to be distributed only in appellants' cups. Both the equipment and the cups display the Coca-Cola trademark logo. The agreements provide that at all times, each appellant is to remain the "exclusive owner" of the equipment. The customer cannot remove Coca-Cola's branding on the equipment, or move the equipment to a new location without

2

appellants' consent. The customer agrees to assume liability for any damage or loss to the equipment. Appellants provide any necessary repairs, for which the customer agrees to pay, although the customer usually is entitled to a number of free service calls. Upon entering into an agreement, appellants would deliver and install the equipment at the customer's location. In the event that the customer failed to purchase the minimum amount agreed to, appellants would either commence charging monthly lease or rental payments or repossess the equipment, as authorized under the agreements. Appellants acknowledge that they do not recoup expenses associated with providing the equipment by charging higher prices for the syrup, carbon dioxide, or cups, or charging an amount for any other aspect of the transaction.

The Comptroller denied appellants' refund claim for $750,632 in sales tax paid—attributable to the period from January 1, 1990, through June 30, 1996—on their purchases of fountain equipment from the manufacturer of that equipment. *See* Tex. Tax Code Ann. § 111.104 (West 2008) (refund claims). The Comptroller also denied the motions for rehearing subsequently filed by appellants. *See id.* § 111.105(c), (d) (West 2008) (motions for rehearing).

On February 21, 2003, appellants filed suit in district court against the Comptroller, challenging the denial of their refund claims. *See id.* § 112.151 (West 2008) (suits for refund). Appellants rely on two tax exemptions: (1) the manufacturing exemption, *see generally id.* § 151.318 (West 2008); and (2) the sale-for-resale exemption, *see generally id.* § 151.302 (West 2008).[1] The parties filed competing motions for summary judgment. On March 6, 2009,

---

[1] Appellant Laredo Coca-Cola Bottling Company seeks a refund of $29,321 plus interest for the audit period May 1, 1993, through June 30, 1996, and relies exclusively on the manufacturing exemption. Appellant Coca-Cola Enterprises, Inc. is the successor in interest to Coca-Cola Bottling

the district court granted the Comptroller's motion for summary judgment, denied appellants' motion for summary judgment, and entered a take nothing judgment in favor of the Comptroller on all of appellants' claims. Appellants appeal.

### Standard of Review

We review the district court's summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). Under the "traditional" standard, a summary judgment should be granted only when the movant establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). When, as here, both parties file motions for summary judgment and the court grants one and denies the other, we must decide all questions presented and render the judgment that the trial court should have rendered. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000).

Statutory exemptions from taxation are strictly construed because "they undermine equality and uniformity by placing a greater burden on some taxpaying businesses and individuals rather than placing the burden on all taxpayers equally." *North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991). Consequently, the burden of proof for

Company of Texarkana and Austin Coca-Cola Bottling Company. Coca-Cola Bottling Company of Texarkana sought a refund of $6,725 plus interest for the audit period October 1, 1991, through June 30, 1996, and relied exclusively on the manufacturing exemption. Austin Coca-Cola Bottling Company sought a refund of $193,770 plus interest for the audit period January 1, 1990, through December 31, 1992, based solely on the sale-for-resale exemption, and sought a refund of $520,816 plus interest for the audit period July 1, 1991, through June 30, 1996, based on both the manufacturing exemption and the sale-for-resale exemption.

showing that the exemption applies is on the claimant. *See id.* The exemption must affirmatively appear in the statutory language, and all doubts are resolved in favor of the taxing authority and against the claimant. *See Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 272 (Tex. 1979). We also recognize that "the rule of strict construction cannot be used as an excuse to stray from reasonableness." *Sharp v. Tyler Pipe Indus., Inc.*, 919 S.W.2d 157, 161 (Tex. App.—Austin 1996, writ denied).

### *Manufacturing Exemption*

Appellants assert that some of their purchases of the fountain equipment are exempt from sales tax under the manufacturing exemption. During the audit period, section 151.318(g) of the tax code provided as follows:

> Each person engaged in manufacturing, processing, fabricating, or repairing tangible personal property for ultimate sale is entitled to a refund or a reduction in the amount of tax imposed by this chapter as provided by Subsection (h) for the purchase of machinery, equipment, and replacement parts or accessories with a useful life in excess of six months if the equipment is used or consumed in or during the actual manufacturing, processing, fabrication, or repair of tangible personal property for ultimate sale, and the use or consumption of the property is necessary or essential to the manufacturing, processing, fabrication, or repair operation, or to a pollution control process.

Act of May 8, 1989, 71st Leg., R.S., ch. 154, § 1, 1989 Tex. Gen. Laws 532, 533, *repealed by* Act of May 31, 1999, 76th Leg., R.S., ch. 1467, § 4.01(3), 1999 Tex. Gen. Laws 4996, 5036. Appellants contend that this exemption applies to the fountain equipment because (1) the fountain equipment is "used . . . in or during the actual manufacturing" of fountain drinks by appellants' customers for

ultimate sale, and (2) appellants are independently "engaged in manufacturing" by virtue of their bottling and canning activities.

The Comptroller contends that the manufacturing exemption does not apply to appellants' purchase of the fountain equipment because appellants do not, themselves, use the equipment for manufacturing. The Comptroller has consistently maintained this interpretation. *See* Tex. Comptroller of Pub. Accounts, Hearing No. 29,774 (Oct. 12, 1994) ("The refund is available only to persons engaged in manufacturing with respect to equipment used by that person in actual manufacturing."); *see also* Tex. Comptroller of Pub. Accounts, Hearing No. 39,695 (Dec. 30, 2002) (issue has been "conclusively decided"); Tex. Comptroller of Pub. Accounts, Hearing No. 31,922 (Dec. 19, 1996) (follows Hearing No. 29,774).

"Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute." *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993). It is a reasonable construction of former section 151.318(g) that its tax exemption for items used in manufacturing applies only to the entity that, in fact, uses those items for manufacturing. Under appellants' interpretation, they would get the tax benefits of a customer's activities based on the happenstance of unrelated manufacturing activities that have nothing to do with the equipment at issue. Such a result runs contrary to the requirement that exemptions from taxation be strictly construed. *See North Alamo Water Supply Corp.*, 804 S.W.2d at 899. It is a reasonable interpretation of the manufacturing exemption, then, that it applies to purchases by the entity that actually uses the purchased equipment for manufacturing.

6

We hold that former section 151.318(g) of the tax code (the manufacturing exemption) does not exempt from taxation appellants' purchases of the fountain equipment at issue because the equipment is not used by appellants in manufacturing, processing, fabricating, or repairing tangible personal property.

### *Sale-for-Resale Exemption*

Appellants also assert that some of their purchases of the fountain equipment are exempt from sales tax under the sale-for-resale exemption. A "sale for resale of a taxable item" is exempt from sales tax. *See* Tex. Tax Code Ann. § 151.302(a). Appellants rely on the following statutory definition of "sale for resale":

> "Sale for resale" means a sale of . . . tangible personal property . . . to a purchaser who acquires the property . . . for the purpose of reselling it in the United States of America . . . in the normal course of business in the form or condition in which it is acquired or as an attachment to or integral part of other tangible personal property . . . .

*Id.* § 151.006(a)(1) (West 2008).

The Comptroller contends that appellants' provision of the relevant fountain equipment to their customers does not qualify as a "sale" and, therefore, appellants' acquisition of the equipment is not "for the purpose of reselling it." To be a "sale" for purposes of the sale-for-resale exemption, the resale must—among other requirements—be "done or performed for consideration." *See id.* § 151.005 (West 2008). Therefore, if appellants' transferring

7

of fountain equipment to their customers was done for no consideration, the sale-for-resale exemption does not apply to appellants' purchase of that equipment.[2]

Consideration can be either a benefit to the promisor or a loss or detriment to the promisee, and surrendering a legal right represents valid consideration. *Northern Natural Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 607 (Tex. 1998). Moreover, it is not necessary that consideration be pecuniary. *See Angelou v. African Overseas Union*, 33 S.W.3d 269, 280 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Appellants rely on three characteristics of their agreements with their customers to argue that the transfer of the equipment is done or performed for consideration.

First, appellants refer to the requirement that the customer use only the products purchased from appellants—syrup, carbon dioxide, and cups—in connection with the fountain equipment. However, we decline to consider this requirement to be a legal detriment to the customer or a surrender of a legal right because the agreements do not, in fact, prohibit the customer's sale of any products not provided by appellants. The requirement only restricts what product can be used in connection with the equipment itself.

Next, appellants point to the requirement that the customer purchase a minimum amount of syrup, carbon dioxide, and cups from appellants. This requirement exists, under the

---

[2] Appellants contend that the party asserting lack of consideration has the burden of proof. However, the cases appellants cite involve a dispute between the parties to the alleged contract with regard to the validity of the contract in general, not a party to the contract seeking a tax exemption relating to a component of the contract. *See ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287, 293 (Tex. App.—Corpus Christi 2003, pet. denied); *Rodriguez v. Southwestern Drug Corp.*, 619 S.W.2d 469, 472 (Tex. Civ. App.—Houston [14th Dist.] 1981, no writ). The burden of proof in a typical contract case does not alter the burden of proof where a claimant is seeking to come within an exemption to taxation.

8

applicable agreements, as the alternative to the customer's obligation to make lease or rental payments. Appellants admit, however, that they did not charge any premium on those products for customers who receive the equipment absent any payment obligation. *See Bullock v. Cordovan Corp.*, 697 S.W.2d 432, 435-36 (Tex. App.—Austin 1985, writ ref'd n.r.e.) (finding consideration for freely distributed magazines due to advertisers' payment to claimant of "additional amount to have the magazines distributed to a certain group"); Tex. Comptroller of Pub. Accounts, Hearing No. 30,151 (Dec. 30, 1993) (finding consideration for free transfer of ovens because transferor received discount on services provided by transferee when using transferred ovens). During the time period in which the customer satisfies the minimum requirement, the only amounts paid to appellants are the amounts paid for the syrup, carbon dioxide, and cups sold, which amounts would be the same for a customer who paid for the equipment under a lease or rental agreement and made the exact same product sales. In the event the customer does not meet its required minimum purchase for the applicable time period, appellants acknowledge that their only response is either to repossess the equipment or to commence assessing lease or rental payments on a prospective basis. Thus, there is no evidence that a customer who fails to purchase the required minimum will be required to pay the amount by which the actual purchases fell below the minimum requirement. To the extent the minimum requirement in this case is actually a detriment to the customer, then, such a detriment relates only to the fountain products themselves, not the equipment.[3]

---

[3] Appellants cite *Northern Natural Gas Co. v. Conoco, Inc.*, in which the supreme court held that the defendant's "promise to deliver for processing all gas that [the defendant] receives under the gas purchase contracts is the surrender of a legal right and therefore is sufficient consideration." 986 S.W.2d 603, 607 (Tex. 1998). However, in this case, the issue is not whether appellants' agreements, as a general matter, are supported by consideration. The issue is whether

The other contractual provision on which appellants rely is the customer's agreement to assume liability for any damage or loss to the equipment while in the customer's possession. Regardless whether such an assumption of liability might constitute consideration as a general matter, we decline to hold that, in these circumstances, it constitutes consideration of a type such as would demonstrate a "resale" under tax code section 151.006(a)(1). The agreement by appellants' customer to pay for any damage or loss to the equipment in its possession results in, at most, the mere possibility of a required payment. Moreover, there is no evidence in the record that appellants have ever enforced this contractual provision.[4] Therefore, there is no evidence that such contractual requirement is, in fact, a detriment to the customer such that appellants' provision of the equipment to their customers—and not appellants' original purchase from the manufacturer—is the transaction that should be subject to sales tax. *See National Bancshares Corp.*, 584 S.W.2d at 272 (for tax exemptions, all doubts resolved in favor of taxing authority and against claimant); *DuPont Photomasks, Inc. v. Strayhorn*, 219 S.W.3d 414, 419 (Tex. App.—Austin 2006, pet. denied) ("The purpose of the sale-for-resale exemption is to prevent double taxation."); *cf. G & J Pepsi Cola Bottling, Inc. v. Limbach*, 548 N.E.2d 936, 939 (Ohio 1990) (finding assumption of liability for damage or loss to equipment to be consideration, under Ohio law, where record demonstrated

the transfer of the equipment itself is supported by consideration. *Northern Natural Gas Co.* does not alter our conclusion that it is not.

[4] In some cases, the applicable agreement required the customer to obtain insurance against damage or loss to the fountain equipment. However, Steven McMahan, appellants' designated corporate representative, admitted in his deposition that appellants did not obtain verification of insurance. Moreover, appellants provided no evidence regarding whether such a provision required the customer to purchase insurance in addition to its preexisting coverage.

retailers were charged for "damages to equipment caused by a car being driven into a machine and for damages to equipment caused by fire").

We hold that the transactions at issue—involving appellants' providing fountain equipment to customers free of charge as long as those customers otherwise meet minimum purchase requirements of sort drink products—is not a "sale" as contemplated by the "sale-for-resale" exemption of the tax code. Therefore, section 151.302(a) of the tax code (the sale-for-resale exemption) does not exempt from taxation appellants' purchases of the equipment.

### *Conclusion*

Based on the summary judgment record, appellants' purchases of fountain equipment are not exempt from sales tax under former tax code section 151.318(g) (the manufacturing exemption) or tax code section 151.302 (the sale-for-resale exemption). We affirm the judgment of the district court.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed: April 15, 2010

11